

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**COPY**

-------------------------------------------------------------x

DESIREE JUAN,

              Plaintiff,

    - against -

LANDAMERICA FINANCIAL GROUP, INC.,
and DOE CORPORATIONS 1-5, names being
fictitious,

              Defendants.

-------------------------------------------------------------x

**07 CIV 7828**

**NOTICE OF REMOVAL**

SEP 05 2007

U.S.D.C. S.D. N.Y.
CASHIERS

      Defendant LandAmerica Financial Group Inc. ("LandAmerica"), by and through its

attorneys, Seyfarth Shaw LLP, and pursuant to 28 U.S.C. §§ 1332 and 1441, files this Notice of

Removal with respect to the case identified as <u>Desiree Juan v. Land America Financial Group</u>

<u>Inc. and Doe Corporations 1-5, names being fictitious</u>, Index No. 18613/07 in the Supreme Court

of the State of New York, County of Bronx.  In support of this Notice, Land America states as

follows:

### Timeliness of Removal

    1.    LandAmerica received a copy of the Summons and Verified Complaint on August

16, 2007.  (A true and correct of the Summons and Verified Complaint ("Complaint") is annexed

hereto as Exhibit A.)

    2.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), having been

filed within thirty (30) days after Land America's initial receipt of the Complaint, which is the

"pleading . . . from which it may first be ascertained that the case is one which is

. . . removable."

**Basis for Removal**

3.     The basis for removal is diversity of citizenship under 28 U.S.C. § 1332, in that:

   (a)     on information and belief, Plaintiff Desiree Juan is a citizen of the State of New York (Summons);

   (b)     LandAmerica is a corporation organized under the laws of the State of Virginia and has its headquarters and principal place of business in the State of Virginia (Complaint ¶ 2); and

   (c)     as alleged in the Complaint, the amount in controversy herein is in excess of $75,000.00, exclusive of interest and costs.

4.     Because there is complete diversity of citizenship and because the amount in controversy exceeds $75,000.00, this Court has jurisdiction over the case under the provisions of 28 U.S.C. § 1441(b).

5.     Venue lies in this Court pursuant to 28 U.S.C. §§ 1441, and 1446(a).  This action was brought originally in the Supreme Court of the State of New York, County of Bronx, and Plaintiff resides in the County of Bronx, State of New York  (Summons).

6.     LandAmerica will file a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of Bronx, to effect removal of this action pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, LandAmerica prays that the above-referenced civil action proceed in the United States District Court for the Southern District of New York as an action properly removed thereto.

Dated: September 5, 2007                    Respectfully submitted,

                                            SEYFARTH SHAW LLP

                                            By: _____
                                                Lorie Almon  (LA 4937)
                                                Robert S. Whitman (RW 1140)
                                                Gloria Galant (GG 2818)

                                            620 Eighth Avenue
                                            New York, New York 10018
                                            (212) 218-5500

                                            Attorneys for Defendant LandAmerica Financial Group,
                                            Inc.



TO:     Murray Schwartz
        Schwartz & Perry LLP
        295 Madison Avenue
        New York, New York 10017
        (212) 889-6565

        Attorneys for Plaintiff



*served 8/16/07 ?*

B199— Summons without notice, Supreme Court.
personal or substituted service. 12 pt. type, 4.94

· 1993 Blumberg Excelsior, Inc. , Publisher, NYC 10013
www.blumberg.com

# Supreme Court of the State of New York
## County of    BRONX

DESIREE JUAN

                                    *Plaintiff(s)*

                    *against*

LAND AMERICA FINANCIAL GROUP INC.,
and DOE CORPORATIONS 1-5, names being
fictitious.

                                    *Defendant(s)*

Index No.  *18613/07*
Date purchased  *8/16/07*

Plaintiff(s) designate(s)
BRONX COUNTY
County as the place of trial.

The basis of the venue is
Plaintiff's Resudence

## Summons

Plaintiff(s) reside(s) at

County of

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within   20   days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated, August 15, 2007

Schwartz & Perry LLP
Attorney(s) for Plaintiff

Office and Post Office Address
295 Madison Avenue
New York, New York 10017
(212)889-6565

Defendant's address:
Land America Financial Group Inc.
140 East 45th Street
New York, New York 10017

SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF BRONX

--------------------------------------------------------------X

DESIREE JUAN,

                           *Plaintiff,*

        -against-

LANDAMERICA FINANCIAL GROUP, INC., and
DOE CORPORATIONS 1-5, names being fictitious,

                           *Defendant.*

--------------------------------------------------------------X

Index No.: 18613/07

**VERIFIED COMPLAINT**

        Plaintiff, Desiree Juan, as and for her Verified Complaint against Defendant, LandAmerica

Financial Group, Inc. ("LandAmerica"), all upon information and belief, respectfully alleges as

follows:

### IDENTITY OF PARTIES

1.        At all relevant times mentioned herein, Plaintiff Desiree Juan ("Juan") was employed

by Defendants LandAmerica Financial Group, Inc. at its subsidiary, Lawyers Title Insurance

Corporation, collectively referred to herein as "LandAmerica," as an Executive Assistant in its

offices, located at 140 East 45th Street, in the County, City and State of New York.

2.        At all relevant times mentioned herein, LandAmerica was and is a domestic

corporation headquartered in Virginia, which maintains offices and is licensed to do business in the

County, City, and State of New York.

3.    Defendants Doe Corporations 1-5 are sued herein under fictitious names for the reason that, after diligent and faithful efforts to ascertain their names and identities through review of corporate filings, their true names and identities are presently unknown to Juan except that they were connected in some manner with LandAmerica and/or were, in some manner related to LandAmerica and Plaintiff prays for leave to insert herein their true names, identities, capacities, activities, and/or responsibilities when the same are ascertained.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

4.    Juan commenced her employment with LandAmerica in April of 1996, and remained there for a span of eleven years, only leaving for a brief few months in 2000.

5.    In 1998, Juan was recruited by Doug Forsyth ("Forsyth") to work directly for himself and another salesman.

6.    After Juan's brief hiatus away from LandAmerica in 2000, Forsyth and Peter Doyle ("Doyle") recommended Juan to return to the sales department to work for the entire sales team in 2001.

7.    In 2004, Juan began work as Executive Assistant to Forsyth, a Vice President of LandAmerica, and she remained in that position until her unlawful constructive discharge due to the reprehensible, sexual harassment, and gender discrimination she was forced to endure while employed at LandAmerica.

2

8.      At all relevant times herein, Juan was qualified for her position, and performed her

duties in a satisfactory manner as confirmed by, among other things, the positive performance

evaluations she received, and the fact that Juan was recruited by a LandAmerica Vice President,

Douglas Forsyth ("Forsyth"), to be his Executive Assistant.

9.      At all relevant times mentioned herein, Peter Doyle ("Doyle") was employed by

LandAmerica as a salesman, whose office, with a windowed-wall, faced Juan's desk.

10.     In May 2005, Juan and a coworker, Tracy Loudon ("Loudon") observed Doyle

masturbating in his office through the window to his office, and because Doyle's office was directly

behind Juan's desk so that she was forced to be degraded and humiliated by Doyle's perverted and

obscene actions.

11.     Juan immediately reported Doyle's conduct and lewd behavior to her supervisor,

Forsyth, who, instead of treating the matter with the appropriate concern, found Doyle's actions

hilarious, and Forsyth proceeded to treat the matter as a joke, humiliating Juan.

12.     Juan, in reporting Doyle's reprehensible conduct to Forsyth, advised Forsyth that she

found Doyle's conduct repugnant and troubling, and she did not want to have to witness it again, and

there was no reasonable way she could avoid having to see it, given the location of her work station.

3

13.     Juan also stated in her complaint to Forsyth, that it made working at her desk troubling and more than uncomfortable, it actually sickened her, and Juan urged that masturbating had no place in an office atmosphere, and that Doyle's revolting behavior made her work environment hostile and degrading to such a pervasive degree that it actually altered the conditions of her work environment.

14.     Juan learned that Forsyth actually proceeded to repeat the story to clients and coworkers, furthering and exacerbating Juan's humiliation and degradation.

15.     Forsyth, in his attempt to convert Doyle's conduct into a joke, circulated Doyle's conduct and Juan's reaction among other LandAmerica employees, which further troubled Juan because coworkers learned that Juan was forced to witness the revolting conduct and that LandAmerica was unwilling to eliminate the obscene conduct.

16.     Juan also reported Doyle's reprehensible and vulgar behavior to Human Resources at LandAmerica's home office in Virginia.

17.     Despite Juan's protests, nothing was done to reprimand Doyle for masturbating in his office and creating a degrading and humiliatingly sexually hostile work environment for Juan.

4

18.     The *only* action that LandAmerica took in response to Juan's complaint of a sexually threatening and humiliating work environment was to cover the windows to Doyle's office, preventing Juan from further witnessing Doyle's behavior, thereby, sending the message that his conduct was acceptable to LandAmerica, and that complaints of sexual harassment and gender discrimination would not be treated seriously.

19.     At all relevant times herein, Juan's position as Executive Assistant to Forsyth required her to bring Forsyth time-sensitive material and alert him to important phone calls and tasks that required Juan to enter Forsyth's office at different times throughout the work day.

20.     Forsyth knew that as part of Juan's job, Juan would enter his office at various times throughout the day, and, when Juan needed to enter Forsyth's office, she would knock and would always wait for Forsyth to respond, and he always told her to enter.

21.     Beginning in early 2006, Juan was again humiliated and degraded when she discovered Forsyth masturbating in his office during work hours, when Forsyth granted Juan access to his office after she knocked on his door.

22.     As Forsyth's Executive Assistant, Juan was required to request entry to Forsyth's office, and despite Forsyth's awareness that Juan was disgusted and humiliated by witnessing Forsyth's conduct, Forsyth continued to masturbate at his desk on a regular basis, and would grant Juan access to his office when she knocked on his door under circumstances that permitted Juan to

deduce that Forsyth had been masturbating at his desk, which was distressing and humiliating to Juan and was done solely because of her gender.

23.    The intimidating and degrading conduct, engaged in and performed by Forsyth, only by way of example, included, among other things, at least the following:

- Knowing that Juan would regularly be required to enter his office to perform her duties, and allowing Juan to enter his office while he was masturbating and watching pornography, which he did solely because of her gender, and was distressing to Juan;

- Masturbating in his office, fully aware that Juan might enter at any moment, which she often did, done only because of Juan's gender, and was thus revolting to Juan;

- Making Juan plug in the company's new headsets under his desk, knowing full-well that the underside of his desk was covered with residue from his masturbatory emissions that he failed to clean up, and done solely because of Juan's gender, and which was humiliating and abhorrent to Juan, and Juan told him never to make her do that again;

- Watching pornography in his office at work;

- Keeping pornography in his office at work;

- Engaging in this conduct so repeatedly, beginning in early 2006, that Juan's work environment became so humiliating, frightening, and intimidating to Juan that she did not know when, or what, to expect next, so that Juan was kept on edge by Forsyth's actions, which created ongoing anxiety and degradation for Juan.

The acts mentioned above are not all-inclusive, but instead are only examples of the many reprehensible and humiliating acts of sexual harassment and gender discrimination that LandAmerica

6

permitted Forsyth to engage in, which were threatening, disturbing, disgusting, humiliating, and created an intensely frightening workplace for Juan who did not know when she might next interrupt Forsyth while he was masturbating.

24.    At all relevant times mentioned herein, Forsyth committed the disturbing, disgusting, and degrading behavior of watching pornography and masturbating in his office while employed as a Vice President with LandAmerica, and at a time when Forsyth was in a position of authority and control over Juan.

25.    After Juan's experience with Doyle, when LandAmerica did nothing in response to Juan's complaint, Juan felt it would now be futile to report Forsyth's behavior to Human Resources, knowing that they would ignore it, as Forsyth did when Juan reported Doyle's conduct.

26.    In August of 2006, while Forsyth was on vacation, Juan came across six CD's containing pornography in Forsyth's office, and in an attempt to put an end to Forsyth's degrading and disgusting habit of watching pornography and masturbating at work on a regular basis, and after showing the content of the discs to Loudon, Juan threw the CD's away in disgust. .

27.    Forsyth's actions so humiliated Juan that in April 2007, Juan began looking within LandAmerica for other positions to transfer to, so that she would no longer be subjected to Forsyth's degrading and revolting behavior.

7

28.     Juan believed that any attempt to report Forsyth's masturbation would be futile because when she reported Doyle's behavior to Forsyth, Forsyth ignored Doyle's conduct and Juan's complaint.

29.     However, the daily degradation and humiliation Juan was forced to suffer because of her gender, became unbearable, and she made the decision to report Forsyth's sexually harassing conduct to Human Resources.

30.     On May 4, 2007, despite Juan's fears that reporting a Vice President's sexual misconduct would result in retaliation, Juan informed Brian Juodzevich ("Juodzevich"), who is another Vice President at LandAmerica and the manager of the Sales Department, and Human Resources that Forsyth watched pornography and masturbated on a regular basis in his office, creating a harassing and hostile environment.

31.     Along with her complaint to Human Resources, Juan submitted a stack of pornographic CD's she had again found in Forsyth's office to Juodzevich.

32.     Human Resources responded to Juan's complaint by putting Forsyth on temporary leave and allegedly conducting an investigation into his actions, and Juan was promised that no one would know that it was she who had complained.

8

33.   After Forsyth returned from his temporary leave, and despite Juan's complaint about his disgusting sexual misconduct, and the humiliation and degradation that Forsyth's actions caused Juan, LandAmerica outrageously required Juan to continue to receive Forsyth's calls and perform work for him.

34.   LandAmerica's response made it clear that it had no genuine interest or desire to protect Juan from further sexual harassment and hostility, but instead would retaliate against Juan as punishment for engaging in a protected activity, namely complaining about the violation of her basic human rights.

35.   Although LandAmerica told Juan that she was not to do any work for Forsyth, LandAmerica had Juan continue doing work indirectly for Forsyth, and to continue to have his phone line connected to hers, and so Juan was forced to implore LandAmerica to move her desk, and that Forsyth's business calls be directed to someone else.

36.   Even after Juan complained to Human Resources, and Forsyth was instructed that he was not to contact Juan, she continued to receive messages from him, which was very threatening and disturbing, and humiliation and degradation were so prevalent in Juan's work environment that it impacted her ability to do her job and caused Juan grief and impacted her well-being.

37.   LandAmerica, by failing to actively and sufficiently remove Juan from working with Forsyth until Juan herself had to suffer further humiliation and degradation by again going to

9

LandAmerica's Human Resources to request that it take action and effectively remove Juan from working with Forsyth, created an environment for Juan permeated with hostility and fear of never knowing when she would next be forced to interact with Forsyth, confirming that LandAmerica had no genuine interest or desire to remedy Juan's hostile and demeaning workplace environment, and sent a clear message that Forsyth's actions were acceptable.

38.     The retaliation to which Juan was subjected by her superiors at LandAmerica, including a revocation of any and all job responsibilities, after she had complained about Forsyth's disgusting and reprehensible sexual misconduct in an effort to protect her basic human rights, was motivated by LandAmerica's desire to punish her for complaining about what Juan reasonably and properly believed to be sexual harassment by a LandAmerica Vice President, Forsyth, and had no legitimate business reason or justification.

39.     After Juan reported Forsyth's vile sexual misconduct, Juan was eventually moved, at her insistence, from Forsyth's office, and Human Resource assured Juan that *no one* would know that she had complained about Forsyth's sexual misconduct.

40.     After Juan became aware that coworkers knew that she had caught Forsyth "doing a Peter Doyle," i.e., masturbating in his office, she soon began hearing jokes about the situation, which caused Juan to feel humiliated and threatened.

10

41.    Juan was stripped of all of her regular responsibilities, and the only work she continued to perform were small tasks for some sales people, and her main new task was to train her replacement, which was humiliating, threatening and demeaning to Juan.

42.    After Juan reported the reprehensible and humiliating violation of her human rights, which LandAmerica knew was committed by Forsyth, the hostile and retaliatory atmosphere was so pervasive as to prevent Juan from performing her duties, and she was required to seek medical attention, and was prescribed antidepressants, which continues to this date, and is presently expected to continue into the future in order to protect Juan's own well-being.

43.    Juan was treated with ridicule and disdain by her coworkers because of LandAmerica's inability to protect and insulate her when she attempted to protect her basic human rights by complaining about Forsyth's disgusting habit of masturbating on a regular basis in his office, where he knew that Juan was prone to walk in at any moment with work-related issues.

44.    On June 18, 2007, after protracted retaliation, and because of the hostile, demeaning, humiliating, and discriminatory nature of her workplace, which LandAmerica created and failed to remedy, even after the retaliation was brought to LandAmerica's attention through Juan's complaints and other communication, Juan had no choice but to remove herself from LandAmerica's workplace in an effort to protect her emotional well-being, the quality of her life and her safety because, if Juan remained, she would have further endangered her health and safety—concerns of which LandAmerica was made aware, but chose to ignore.

11

45.     Rather than directly discharge Juan, LandAmerica intentionally created a work atmosphere that was so intolerable for Juan that she was forced to remove herself from that work atmosphere involuntarily.

46.     Thus, Juan found her work conditions so intolerable and her workplace so permeated with discriminatory and retaliatory conduct that Juan, under the circumstances, was forced and compelled to remove herself from the hostility and intimidation she suffered, because she was fearful of the negative impact Forsyth's conduct, and LandAmerica's failure to protect her, was having on her job, her health, and her personal well-being.

47.     Due solely to the egregious and heinous nature of the conduct of LandAmerica, as well as the failure of LandAmerica to provide Juan with a hostility-free workplace in which to perform, it was reasonable for Juan to find her workplace so intolerable that she was compelled to leave, leading to her constructive discharge.

48.     Juan has suffered from the adverse effects of the harassment and retaliation and the quality of her life has been irreparably damaged and her self-esteem, self-respect, and well-being have all been irreversibly harmed because she was subjected to the intimidating and threatening type of conduct described herein, for which Juan has been required to seek medical attention, all of which will continue into the future and remain a source of humiliation, anguish and financial loss for Juan, so that the quality of Juan's life has been significantly damaged solely as a result of the humiliating and degrading harassment and retaliation she was forced to endure by LandAmerica.

12

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF
JUAN AGAINST LANDAMERICA FOR UNLAWFUL
GENDER DISCRIMINATION IN VIOLATION OF CHAPTER
I, TITLE 8, § 8-107(1)(a) OF THE ADMINISTRATIVE CODE
OF THE CITY OF NEW YORK**

49.     Juan repeats, re-alleges, and incorporates in full paragraphs 1 through 48 of this

Complaint, as though fully set forth at length herein.

50.     The entirety of the acts which constitute this first cause of action, as set forth above,

all of which are deemed repeated and re-alleged herein as though said paragraphs were specifically

set forth herein, were perpetrated upon Juan while she was in the course of her employment with

LandAmerica.

51.     At the time that Juan endured the harassing and discriminatory conduct, Juan was in

a protected class, based on her gender, under the New York City Human Rights Law.

52.     Throughout the time of her employment with LandAmerica, Juan performed the

duties and functions of her employment in a fully satisfactory fashion, and was qualified to continued

doing so.

53.     The hostile, offensive, and intimidating work environment resulting from the pattern

and practice of revolting conduct and sexual harassment to which Juan was subjected solely because

of her gender, unreasonably interfered with Juan's work performance and, thereby, altered the terms

13

and conditions of Juan's employment.

54.    LandAmerica is liable to Juan for the hostile and abusive environment she suffered in her workplace, which occurred because of Juan's gender, because it allowed and condoned a workplace permeated with discriminatory behavior, humiliation, ridicule, and insult that was sufficiently severe and pervasive so as to alter the terms, conditions and privileges of Juan's employment, and which created an abusive and hostile work environment and led to her constructive discharge, which constituted an adverse employment action against her.

55.    LandAmerica was obligated to maintain a workplace free of hostility and to prevent its employees from violating any laws designed to prevent unlawful discrimination in employment and, therefore, is legally responsible and liable to Juan for the acts of its supervisory employees toward her that resulted in an adverse employment action against Juan in violation of the New York City Human Rights Law.

56.    As a result of Forsyth's conduct, Juan has been adversely affected in her employment and in her normal life's pursuits, was caused, permitted and allowed to suffer extreme humiliation, ridicule, mental anguish and emotional distress and suffered the symptoms of such injuries, and was required to seek care to address these injuries, all in an effort to reduce the devastating effects of Forsyth's acts and the destructive effect they have had and continue to have upon the quality of her life.

14

57.     The aforementioned acts of LandAmerica constitute unlawful gender discrimination against Juan in violation of Chapter 1, Title 8 of the Administrative Code of the City of New York, § 8-107(1)(a) (referred to as the New York City Human Rights Law), which provides, *inter alia*, that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of...gender...to discriminate against such a person in compensation or in terms, conditions or privileges of employment.

58.     As a result of LandAmerica's violation of the New York City Human Rights Law § 8-107(1)(a), LandAmerica is liable to Juan pursuant to § 8-502(a) of said statute for "damages, including punitive damages," and pursuant to § 8-502(f) of said statute for "costs and reasonable attorney's fees" based on the lodestar method as has been judicially established and accepted when attorney's fees are provided for under the law.

59.     As a direct and proximate result of LandAmerica's conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, Juan has been adversely affected in her employment and in her life's normal pursuits, and Juan believes that the injuries inflicted upon her as a direct result of the occurrences complained of herein have, and will continue to have, an irreparably devastating effect upon her well-being, for which LandAmerica should be required to pay Juan in the amount of three million ($3,000,000) Dollars in compensatory damages.

60.     Here, the acts of LandAmerica were so reprehensible and were done so clearly with malice and/or reckless indifference in the face of perceived risk that its action would violate Juan's

15

protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon Juan and in addition to all the measures of relief to which Juan may properly by entitled herein, LandAmerica should also be required to pay punitive damages as punishment for its discriminatory conduct in the amount of three million ($3,000,000) Dollars, in order to deter LandAmerica and others similarly situated from engaging in such conduct in the future.

61.    Juan, therefore, seeks compensatory damages in this cause of action, including, among other things, for loss of earnings and loss of earning capacity and for the physical and emotional harm inflicted upon her in the sum of three million ($3,000,000) Dollars, and the additional and further sum of three million ($3,000,000) Dollars for punitive damages, making a total of six million ($6,000,000) Dollars, plus the cost of this action as well as reasonable attorney's fees on this first cause of action.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF JUAN AGAINST LANDAMERICA FOR RETALIATION ON VIOLATION OF CHAPTER 1, TITLE 8, § 8-107(7) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

62.    Juan repeats, re-alleges and incorporates in full paragraphs 1 through 48 of this Complaint, as though fully set forth at length herein.

63.    When Juan complained of discriminatory treatment based on her gender that she was subjected to by LandAmerica, which is a protected activity under the New York City Human Rights

16

Law, she was subjected to unlawful retaliation.

64.    When Juan complained about the gender-based discriminatory treatment that she was subjected to by Forsyth, which is a protected activity under the New York City Human Rights Law, she was subjected to further retaliation and further abuse, all of which adversely and severely impacted her position, career and well-being and was designed to punish her for having complained about the humiliating, sexually harassing treatment she was forced to endure.

65.    LandAmerica was aware that Juan had engaged in a protected activity under the New York City Human Rights Law when she complained about the hostile environment but, nevertheless, retaliated against her for doing so.

66.    In retaliation for complaining about the conduct of Forsyth and the hostile environment which LandAmerica caused, permitted and allowed to exist in Juan' workplace, LandAmerica took adverse employment action against Juan, which led to her constructive discharge.

67.    LandAmerica's adverse employment action consisted, in part, of repeated public ridicule of walking in on Forsyth masturbating in his office, which had the effect of irreparably harming Juan's well-being due to the constant humiliation and degradation to which Juan was subjected and resulted in a significant loss to the quality of her life.

17

68.    Juan was caused to suffer and continues to suffer from the adverse effects of her treatment by LandAmerica because of the retaliation to which she was subjected by LandAmerica, in violation of Juan' human rights under the law.

69.    The aforementioned acts of LandAmerica constitute unlawful discriminatory retaliation against Juan in violation of Chapter 1, Title 8 of the Administrative Code of the City of New York, § 8-107(7) of the New York City Human Rights Law, which provides, *inter alia*, that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (I) opposed any practice forbidden under this chapter...

70.    As a direct and proximate result of LandAmerica's violation of the New York City Human Rights Law, LandAmerica is liable to Juan pursuant to § 8-502(a) of said statute for "damages including punitive damages," pursuant to § 8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here.

71.    As a direct and proximate result of LandAmerica's conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, Juan has been adversely affected in her employment and in her life's normal pursuits, and Juan believes that the injuries inflicted upon her as a direct result of the occurrences complained of herein have, and will

18

continue to have, an irreparably devastating effect upon her well-being, for which LandAmerica should be required to pay Juan in the amount of three million ($3,000,000) Dollars in compensatory damages.

72.     Here, the acts of LandAmerica were so reprehensible and were done so clearly with malice and/or reckless indifference for the perceived risks that its actions would violate Juan' protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon Juan and in addition to all the measures of relief to which she may properly be entitled herein, LandAmerica should also be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of three million ($3,000,000) Dollars, in order to deter LandAmerica and others similarly situated from engaging in such conduct in the future.

73.     Juan, therefore, seeks compensatory damages in the second cause of action, including, among other things, for the emotional harm inflicted upon her, in the sum of three million ($3,000,000) Dollars, and the additional and further sum of three million ($3,000,000) Dollars for punitive damages, making a total of six million ($6,000,000) Dollars, plus the cost of this action as well as reasonable attorney's fees on this cause of action.

WHEREFORE, Plaintiff Desiree Juan demands judgment against LandAmerica on the First Cause of Action in the sum of three million ($3,000,000) Dollars in compensatory damages and the further and additional sum of three million ($3,000,000) Dollars in punitive damages, for a total of six million ($6,000,000) Dollars, plus the costs of this action and reasonable attorney's fees as

19

permitted under the law; and on the Second Cause of Action in the sum of three million ($3,000,000)

Dollars in compensatory damages and the further additional sum of three million ($3,000,000)

Dollars in punitive damages, for a total of six million ($6,000,000) Dollars, plus costs of this action

and reasonable attorney's fees as permitted under the law, so that for both the First and Second

causes of action Plaintiff seeks a total of twelve million ($12,000,000) Dollars as specifically

identified above, plus the costs of this action, prejudgment interest and reasonable attorney's fees,

calculated upon the lodestar method, as permitted under the law, and for such other relief as this

Court deems just and proper.

SCHWARTZ & PERRY, LLP
Attorneys for Plaintiff

By:
MURRAY SCHWARTZ
MATTHEW T. SCHATZ
295 Madison Avenue
New York, New York 10017
(212) 889-6565

20

SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF BRONX
------------------------------------------------------------------X

DESIREE JUAN,

        *Plaintiff,*

    -against-

LANDAMERICA FINANCIAL GROUP, INC., and
DOE CORPORATIONS 1-5, names being fictitious,

        *Defendant.*
------------------------------------------------------------------X

**Index No.:**

**VERIFICATION**

| STATE OF NEW YORK | ) | |
|---|---|---|
| | )ss: | |
| COUNTY OF NEW YORK | ) | |

    DESIREE JUAN, being duly sworn, says:

    I am the Plaintiff in the within action; I have read the foregoing Complaint and know the

contents thereof, the same is true to my knowledge, excepts as to the matters therein state to be

alleged on information and belief, and as to those matters, I believe them to be true.

                              DESIREE JUAN

Sworn to me on this 10th
day of August 2007

NOTARY PUBLIC

MATTHEW SCHATZ
Notary Public, State of New York
No. 02SC6129535
Qualified in Queens County
Commission Expires June 27, 2009